UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON
TACOMA DIVISION

| | |
|---|---|
| ANGELIQUE M. LOUIS,<br><br>  Plaintiff,<br><br>v.<br><br>CONIFER HEALTH SOLUTIONS LLC, A FOREIGN CORPORATION; AND FRANCISCAN HEALTH SYSTEM, A WASHINGTON PUBLIC BENEFIT CORPORATION,<br><br>  Defendants. | No. 3:21-cv-05700-RSM-SKV<br><br>**PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES** |

Plaintiff Angelique M. Louis, through her attorneys Beck Chase Gilman PLLC, alleges as follows:

## I.  PARTIES

1.1. Plaintiff Angelique M. Louis (Louis) is a Washington resident.

1.2. Defendant Conifer Health Solutions (Conifer) is a foreign corporation headquartered in Frisco, Texas, doing business in Washington State, which employs more than 15 employees.

1.3. Defendant Franciscan Health System (Franciscan) is a Washington Public Benefit Corporation providing medical services in Washington State which employs more than 15 employees. Franciscan changed its name to Virginia Mason Franciscan Health as of January 5, 2021, but at all relevant times was Franciscan Health System.

1.4. Franciscan has several locations, including St. Joseph Medical Center, a hospital in Pierce County, Washington, which employs more than 15 employees.

FIRST AMENDED COMPLAINT – 1 of 8
(3:21-cv-05700-RSM-SKV)

BECK CHASE GILMAN PLLC
711 Court A, Suite 202
Tacoma, WA 98402
253.289.5104 | bcglawyers.com

1.5.    Conifer and Franciscan were Louis' joint employers, as explained below.

## II.    Jurisdiction & Venue

2.1.    **Error! Reference source not found.** County Superior Court has jurisdiction over this matter under RCW 2.08.010 and other applicable law.

2.2.    Venue is proper in **Error! Reference source not found.** County Superior Court under RCW 4.92.010, RCW 4.12.020, and other applicable law. Defendants operate in Pierce County, Washington through its affiliate location St. Joseph Medical Center and the acts and omissions described in this Complaint occurred in Pierce County, Washington.

2.3.    Plaintiff filed charges with the EEOC on October 26, 2020. Her charge against Conifer was EEOC Charge No. 551-2020-03707. Her charge against Franciscan was EEOC Charge No. 551-2020-03584. On May 11, 2021, the EEOC issued right to sue letter for both charges. Louis filed suit on August 9, 2021.

## III.    Facts

3.1.    Plaintiff Angelique M. Louis (Louis) began working at Franciscan location St. Joseph Medical Center in August 2017 as an Emergency Room Patient Access Representative.

3.2.    Louis was at all relevant times an employee of Conifer Health Solutions, a Texas Corporation, and Franciscan Health System, and physically worked in Tacoma, Washington at St. Joseph Medical Center, a Franciscan health care facility. Louis did not work at any other location.

3.3.    Upon being hired, Louis attended a one-to-two-week training put on by Conifer. The focus of the training was how to serve and respect the needs of the client, Franciscan.

3.4.    The duration of the relationship between the parties was ongoing; there was no set end time to Louis' work at Franciscan's St. Joseph Medical Center.

3.5.    Franciscan exercised control over details of Louis' work.

3.6.    For example, Franciscan prescribed the dress code for Louis, dictating through Conifer how she and her coworkers had to dress.

First Amended Complaint – 2 of 8
(3:21-cv-05700-RSM-SKV)

Beck Chase Gilman PLLC
711 Court A, Suite 202
Tacoma, WA 98402
253.289.5104 | bcglawyers.com

3.7. Franciscan provided a name tag for Louis, which did not reference Conifer at all. The name tag had a photo of Louis along with the white, blue, and green Franciscan logo, and Louis' name. This name tag served as a security badge and allowed Louis to access St. Joseph hospital generally and areas of the emergency department specifically. When Franciscan patients looked at an Emergency Room Patient Access Representative's badge, Emergency Room Patient Access Representatives were outwardly presented as employees of Franciscan only.

3.8. Franciscan provides emergency care services to patients at their St. Joseph's Medical Center hospital. Part of the regular business of Franciscan is registering patients' biographical and insurance information so that the patients can receive medical care. Franciscan is in the business of treating emergency room patients.

3.9. In her role as Emergency Room Patient Access Representative, Louis was one of the first points of contact for Franciscan patients. In her role, Louis directly served Franciscan patients, checking them in to the Emergency Room and collecting their insurance information, which she provided to Franciscan doctors, nurses, and management.

3.10. If a patient was not registered into the system by an Emergency Room Patient Access Representative, Franciscan doctors and nurses could not treat the patient.

3.11. Louis entered patient information into a registration portal. The portal belonged to Conifer and was linked to Franciscan's system. The information Louis provided was available immediately to Franciscan doctors, nurses, and management. The information Louis collected and the way she interacted with patients was tailored to the requirements of the Franciscan facility.

3.12. The Emergency Room Patient Access Representative services Louis provided were based on the needs of St. Joseph Medical Center, a Franciscan health care facility.

3.13. The hours Louis worked were based solely on the needs of St. Joseph Medical Center, a Franciscan health care facility.

3.14. For her work as Emergency Room Patient Access Representative, Louis utilized instrumentalities and tools belonging to both Franciscan and Conifer. She used a workstation within Franciscan's emergency department. The desk and other surfaces Louis utilized as her

First Amended Complaint – 3 of 8
(3:21-cv-05700-RSM-SKV)

Beck Chase Gilman PLLC
711 Court A, Suite 202
Tacoma, WA 98402
253.289.5104 | bcglawyers.com

workstation were fixtures of Franciscan's facility, while the electronic equipment provided was often from Conifer.

3.15. While on shift at Franciscan, Franciscan doctors, nurses, and management regularly directed Louis' work, including notifying her when an ambulance arrived with a patient, instructing her to go collect registration information from patients, directing her to physically go into a patient's pockets or belongings to locate biographical and insurance information to register them into Franciscan's system.

3.16. Regularly, Franciscan nurses directed Louis and other Emergency Room Patient Access Representatives to print new wristbands or update stickers of patients and to follow up on registration information of the patients.

3.17. For her work as an Emergency Room Patient Access Representative, Louis was required to use both a Conifer email platform and a Franciscan email platform. She maintained separate login credentials for each and was required to check both email accounts daily. Both accounts were how Louis received communications related to her work, hours, pay, benefits, and anything else related to her employment.

3.18. At all relevant times, Louis' Conifer manager was Patient Access Representative Supervisor Michael Cook.

3.19. At all relevant times, Louis' Leave of Absence Representative was Rebecca Estelle.

3.20. Louis has Supraventricular tachycardia (SVT), a heart condition that causes an abnormally fast or erratic heartbeat and affects the heart's chambers. This condition required heart surgery when Louis was about 14 years old. At that time, Louis received an SVT ablation to help neutralize her condition, but it was not fully successful.

3.21. Relatedly, Louis also suffers from low blood pressure and fainting spells.

3.22. As a result of her medical conditions Louis has issues with blood pressure and shortness of breath. She takes Metoprolol to help treat her condition, which is a beta blocker that treats high blood pressure, chest pain (angina), and heart failure, and may lower the risk of death in the event of a heart attack, to which Louis is particularly susceptible.

First Amended Complaint – 4 of 8
(3:21-cv-05700-RSM-SKV)

Beck Chase Gilman PLLC
711 Court A, Suite 202
Tacoma, WA 98402
253.289.5104 | bcglawyers.com

3.23. In or about March 2020, the COVID-19 pandemic hit the Tacoma area.

3.24. At that time, Louis was an on-call employee and was working full-time.

3.25. Prior to COVID-19, Louis was able to perform the essential functions of her position without accommodation. However, during COVID-19, Louis was considered high-risk of serious injury of death if she contracted COVID-19 because of her heart condition.

3.26. In or about March 2020, Louis wore a mask to work to protect herself during direct interactions with acutely ill and injured patients checking in to the Emergency Room. However, Louis was notified by Franciscan nurses that she could not wear a mask, gloves, or any other type of personal protective equipment (PPE) while interacting with patients because it might scare them. Franciscan charge nurses and personnel made the decision regarding PPE.

3.27. Due to not being permitted to wear PPE to protect herself at Franciscan's facility, and because Franciscan's facility was the only location of Louis' workplace, Louis was required to take a temporary leave of absence from work.

3.28. Shortly thereafter, in or about late March 2020, Louis received an email generally offering employees the option to work from home. Needing a reasonable accommodation for her heart condition, Louis responded to that email requesting to work from home.

3.29. Because Louis was at high-risk for serious injury or death if she contracted COVID-19, was not permitted to wear a mask, gloves, or any other PPE while interacting with Emergency Room patients, and was not permitted work from home as a form of reasonable accommodation, Louis remained on leave of absence while she participated in the interactive process.

3.30. Louis' employers required Louis to provide a doctor's note specifically discussing her medical condition. Louis attempted to make an appointment with her primary care physician and also with her cardiologist to provide the specific request but, because of the medical response to COVID-19 everywhere, it was difficult for her to secure an appointment. Louis kept in contact with her employers regarding her attempts to see her medical provider.

3.31. On or about June 2, 2020, Louis communicated with Leave of Absence Representative Rebecca Estelle informing her that she was finally able to secure an appointment

First Amended Complaint – 5 of 8
(3:21-cv-05700-RSM-SKV)

Beck Chase Gilman PLLC
711 Court A, Suite 202
Tacoma, WA 98402
253.289.5104 | bcglawyers.com

with her primary care physician for July 28, 2020. Louis offered to provide other documentation of her health condition in the meantime. Louis ended her June 2 email, "These are difficult times for all of us but I can't ignore my health especially being high risk during this pandemic." Louis did not receive a response to this email.

3.32. On or about June 4, 2020, Louis received an email asking her to complete a survey regarding her recent separation from employment. This was the first Louis learned about her termination. Louis sent a letter requesting the reason she was terminated.

3.33. On or about July 1, 2020, Conifer HR informed Louis she was fired for "job abandonment." Louis was never granted a reasonable accommodation for her heart condition.

3.34. Defendants had knowledge of Louis' medical condition and need for reasonable accommodation, but failed to reasonably accommodate her or participate in the interactive process.

3.35. Defendants violated Louis' rights by failing to accommodate her and firing her as a result of her disability. Defendants violated Louis' right to be free from disability-based discrimination in the workplace.

## IV. Causes of Action

4.1. Plaintiff realleges and incorporates all allegations above.

4.2. Under State and Federal law, Plaintiff is entitled to a workplace free from disability-based discrimination and retaliatory termination.

4.3. Under State and Federal law, an entity can be held liable for discrimination if it is an "employer" of the plaintiff. *See, e.g*, RCW 49.60.040(11) ("'Employer' includes any person acting in the interest of an employer, directly or indirectly, who employs eight or more persons"); 42 U.S.C. § 12111(5)(A) ("The term 'employer' means a person engaged in an industry affecting commerce who has 15 or more employees."). "It is now well-settled that an individual can have more than one employer." *See U.S. Equal Employment Opportunity Comm'n v. Glob. Horizons, Inc.*, 915 F.3d 631, 637–38 (9th Cir. 2019) (Citing to *Frey v. Hotel Coleman*, 903 F.3d 671, 676–77 (7th Cir. 2018); *Al-Saffy v. Vilsack*, 827 F.3d 85, 96 (D.C. Cir. 2016); *Faush v. Tuesday Morning, Inc.*,

First Amended Complaint – 6 of 8
(3:21-cv-05700-RSM-SKV)

Beck Chase Gilman PLLC
711 Court A, Suite 202
Tacoma, WA 98402
253.289.5104 | bcglawyers.com

808 F.3d 208, 215 (3d Cir. 2015); and *Butler v. Drive Automotive Industries of America, Inc.*, 793 F.3d 404, 408–10 (4th Cir. 2015)). "The law recognizes that two entities may simultaneously share control over the terms and conditions of employment, such that both should be liable for discrimination relating to those terms and conditions." *Id*. (Citing to *Butler*, 793 F.3d at 408–10.) "The two entities in such circumstances are deemed to be joint employers of the employees in question." *Id*. Here, as explained above, Conifer and Franciscan are joint employers.

4.4. In 2019, the Ninth Circuit addressed the circular nature of statutory definitions and explained: "The Court has relied on common-law agency principles to flesh out the meaning of 'employer' and 'employee' when construing other statutes that contain the same circular definitions as those found in Title VII." *Glob. Horizons, Inc.*, 915 F.3d 631 at 638 (citing *Clackamas Gastroenterology Assocs., P. C. v. Wells*, 538 U.S. 440, 444-45, 123 S. Ct. 1673, 1677, 155 L. Ed. 2d 615 (2003), which applied the same analysis in the context of the ADA). "Under the common-law test, 'the principal guidepost' is the element of control—that is, 'the extent of control that one may exercise over the details of the work of the other.' *Id*. (quoting Clackamas, 538 U.S. at 448.) The Court has provided a non-exhaustive list of factors to consider when analyzing whether the requisite control exists: the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party. *Id*. (citing *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 323-24, 112 S.Ct. 1344, 1348 (1992). "There is 'no shorthand formula' for determining whether an employment relationship exists, so 'all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.' *Id*. (quoting *Darden*, 503 U.S. at 324).

4.5. The treatment Plaintiff experienced as an employee of Conifer and Franciscan violated the Washington Law Against Discrimination, Chapter 49.60 RCW.

First Amended Complaint – 7 of 8
(3:21-cv-05700-RSM-SKV)

Beck Chase Gilman PLLC
711 Court A, Suite 202
Tacoma, WA 98402
253.289.5104 | bcglawyers.com

4.6. The treatment Plaintiff experienced as an employee of Conifer and Franciscan violated the Americans with Disabilities Act, 42 U.S.C. § 12111.

4.7. Being terminated for requesting reasonable accommodation during the COVID-19 pandemic amounts to wrongful termination in violation of public policy. Washington law set forth anti-retaliation provisions for Washington workers who needed accommodations for COVID-19.

4.8. Defendants' conduct has resulted in and proximately caused injury and damage to Plaintiff in an amount to be proven at trial, for which she is entitled to recover all economic and noneconomic damages, actual and compensatory damages, special and general damages, and attorneys' fees and costs, as permitted by Chapter 49.60 RCW, 42 U.S.C. § 12111, or any other applicable law.

## V. Relief Requested

Plaintiff seeks the following relief:

5.1 Judgment against Defendants and in favor of Plaintiff for all past and future economic and noneconomic damages in an amount to be proved at trial;

5.2 Judgment against Defendants for all costs, expenses of litigation, and reasonable attorneys' fees as allowed by law, including prejudgment interest;

5.3 An enhanced award for tax consequences to make Plaintiff whole; and

5.4 All other relief as the Court deems just and equitable.

Dated October 18, 2021.

Beck Chase Gilman PLLC

By: /s/ Janelle E. Chase
By: /s/ James W. Beck
By: /s/ Eric D. Gilman
James W. Beck, WSBA No. 34208
james@bcglawyers.com | D 253.289.5122
Eric D. Gilman, WSBA No. 41680
eric@bcglawyers.com | D 253.289.5108
Janelle E. Chase Fazio, WSBA No. 51254
janelle@bcglawyers.com | D 253.289.5136
Attorneys for Plaintiff Angelique Louis

First Amended Complaint – 8 of 8
(3:21-cv-05700-RSM-SKV)

Beck Chase Gilman PLLC
711 Court A, Suite 202
Tacoma, WA 98402
253.289.5104 | bcglawyers.com